**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ALREE B. SWEAT, III,

    Plaintiff,

v.                                                                                                                  CV 10-0338 JB/WPL

CITY OF LAS CRUCES, State of New
Mexico, ex rel. on behalf of Las Cruces
Police Department, TODD FROATS,
and LANDIS HARTRANFT

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before me on the Defendants' Motion for Summary Judgment (Doc. 14) and Plaintiff Alree B. Sweat, III's cross-Motion for Summary Judgment (Doc 24.) Sweat did not respond to the Defendants' Motion aside from filing his own Motion. The Defendants filed a Response to Sweat's Motion (Doc. 25), and Sweat filed a Reply (Doc. 30). Sweat's Complaint, brought pursuant to 42 U.S.C. § 1983, alleges that his Fourth, Eighth and Fourteenth Amendment rights were violated on April 20, 2009 when two City of Las Cruces police officers detained him and ultimately seized his car. (Doc. 1.) The Defendants' Motion asserts that Officers Froats and Hartranft are entitled to qualified immunity and that Sweat did not plead the necessary elements to assert a claim against the City of Las Cruces. (Doc. 15.)  Sweat argues that he is entitled to summary judgment, presumably on the basis that there are no issues of material fact precluding a judgment in his favor. (Doc. 24.) Sweat is proceeding *pro se* and *in forma pauperis*. Considering the evidence in the light most favorable to the nonmoving party for each motion, *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1142 (10th Cir. 2009) (quoting FED. R. CIV. P. 56(c)), I find that there are no fact issues

precluding the entry of summary judgment. I recommend that the Defendants' Motion for Summary Judgment be granted and that the Plaintiff's cross-Motion for Summary Judgment be denied.

## BACKGROUND

The following facts are not in dispute. (*See* Doc. 1 at 4-5; Doc. 15 at 2-5, Ex. A, Ex. A-1; Doc. 24 at 2-6; Doc. 25 at 1-3; Doc. 30 at 1-3.) On April 20, 2009, Sweat and at least one other man, both of whom are African American, were standing outside a vehicle at the Bradley's gas station in Las Cruces, New Mexico. Las Cruces Police Officer Todd Froats drove into the gas station parking lot. Officer Froats called Central Dispatch and asked them to run the license plate of the vehicle. After some amount of time, both Sweat's vehicle and Officer Froats drove away from the gas station. Central Dispatch notified Officer Froats at some point that the vehicle was registered to Sweat and that the vehicle's license plate had expired in August of 2007. Officer Froats saw the vehicle in motion but did not pull the vehicle over.

Officer Froats approached the vehicle after it was parked in an apartment complex parking lot. The driver and passengers of the vehicle, two men and two women, were standing near the car when Officer Froats approached. Officer Froats did not see who was driving, but he approached the two men and asked who had been driving the car. Sweat initially denied driving but, when confronted by Officer Froats, did not deny driving.[1] Officer Froats asked Sweat for the registration and insurance for his vehicle; Sweat initially said that he did not have either but later said that the

---

[1] Sweat does not address several of the subsequent undisputed facts in his Motion for Summary Judgment or in his Reply. Failure to controvert the allegedly undisputed facts constitutes an admission that the facts are not in dispute. D.N.M.LR-Civ. 56 ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted [in the Response].") Furthermore, though, there is a sound recording of the incident. (Doc. 15 Ex. A-1.) All of the following facts are supported by that recording. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (holding that facts may be viewed in light of an unaltered recording to determine whether there is a genuine issue of material fact). Based on the beginning of the recording, the tape was turned on by Officer Froats shortly after he approached the two men.

paperwork for his car was in his house. Officer Froats asked Sweat and the other man, Brad Garner, for their identification. Neither man had identification on his person but both provided their names and dates of birth. Officer Froats sent that information to Central Dispatch.

Officer Froats asked both men to keep their hands out of their pockets once thirty seconds into the recording. He asked them to sit against the car. Almost two minutes into the recording, Officer Froats stated, "If you continue to move around . . ." and told them again to sit against the car and stay there. Officer Froats stated in his affidavit that he asked them to keep their hands out of their pockets three or four times and that he was concerned that they may be reaching for a weapon. Officer Froats frisked Garner's outer clothing for weapons. Officer Froats felt what appeared to be brass knuckles in Garner's pocket and removed the item, which was in fact brass knuckles, from his pocket. Officer Froats arrested Garner for possession of brass knuckles in violation of a municipal ordinance. At some point, another Las Cruces Police Officer, Landis Hartranft, had arrived on the scene. Officer Hartranft frisked Sweat's outer layer of clothing after Officer Froats found brass knuckles in Garner's pocket.

Five and a half minutes after arresting Garner for possession of brass knuckles, Garner claimed to be the driver of the vehicle. Central Dispatch informed Officer Froats that Garner's driver's license was revoked because of a previous driving while intoxicated conviction. Officer Froats informed Sweat that he was seizing the car pursuant to a City of Las Cruces ordinance. Shortly over one minute after Garner admitting to being the driver, Officer Froats told Sweat, "You are free to go." The total length of Sweat's detention was eleven minutes, based on the recording.

The following facts remain in dispute. Before leaving the gas station, Sweat asserts that he got into the car, presumably on the driver's side, and sat there for two to five minutes watching Officer Froats' police car. (Doc. 1 at 4.) When he left the station, he claims that a second patrol car

3

came toward him from the opposite direction. (*Id.*) Sweat states that he drove approximately two miles without being pulled over. (*Id.*) Finally, Sweat asserts that he was actually the driver, though he admits that he did not tell the police this and that Garner stated that he was the driver. (*Id.*)

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this burden is met, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted).

Where a defendant seeks summary judgment on the basis of qualified immunity, the standard is slightly different. Qualified immunity exists to protect government officials from litigation based on their performance of discretionary functions so long as their conduct does not violate established constitutional or statutory rights of which a reasonable person should know. *Swanson v. Town of Mountain View*, 577 F.3d 1196, 1199 (10th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the defense of qualified immunity, the plaintiff faces dual hurdles. The plaintiff must come forward with specific evidence demonstrating that (1) the defendants violated a constitutional or statutory right and (2) the right violated was clearly established at the time of the defendants' actions. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, ---,

4

129 S. Ct. 808, 815-16, 818 (2009); *Saucier v. Katz*, 533 U.S. 194, 200 (2001)); *see also Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1218-19 (10th Cir. 2006). A court considering whether qualified immunity is appropriate is not required to consider these prongs in any particular sequence but may address them in the order dictated by the circumstances of the individual case. *Pearson*, 555 U.S. at ---, 129 S. Ct. at 818.

Finally, as with all pleadings filed by *pro se* individuals, I liberally construe the allegations contained in Sweat's Complaint, cross-Motion for Summary Judgment and Reply. *Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, I must apply the same legal standards applicable to pleadings drafted by counsel. *Id.*

## DISCUSSION

A.   *Qualified Immunity*

Sweat alleges that the Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights when Officers Froats and Hartranft (1) detained him for a traffic violation when his vehicle, which had expired license plates, was parked on private property, (2) continued the detention for approximately eleven minutes while they determined the identity of the driver, (3) patted him down for weapons, and (4) impounded his vehicle pursuant to a City of Las Cruces ordinance after determining that a man with a suspended driver's license for a previous offense of driving while intoxicated had operated the vehicle. Though the Plaintiff asserts otherwise, these actions all pertain to seizures of his person and his property and so arise under the Fourth Amendment. He further alleges that the officers' actions were motivated by racial animus. This claim arises under the Fourteenth Amendment. I will address each of these contentions in turn, guided by the controlling constitutional amendments.

It is well settled that traffic stops[2] and frisks for weapons are seizures and searches within the meaning of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 19 (1968); *United States v. Zubia-Melendez*, 263 F.3d 1155, 1159-60 (10th Cir. 2001). The touchstone of a court's "analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (quoting *Terry*, 392 U.S. at 19).

A police officer may initiate a traffic stop based on an observed violation or "reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001) (quotation omitted); *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). The sole inquiry, then, "is whether the particular officer had reasonable suspicion that the particular motorist violated 'any . . . of the multitude of applicable traffic and equipment regulations' of the jurisdiction." *Hunnicutt*, 135 F.3d at 1348 (quoting *Delaware v. Prouse*, 440 U.S. 648, 661 (1979)). Here, it is undisputed that Sweat's license plates had expired and that Officer Froats witnessed the car being operated on a public road.[3] New

---

[2] Sweat disputes whether the detention was a traffic stop. At least one case out of this District concluded that the mere fact that a car is parked before the police made contact with the vehicle's occupants does not alter the nature of the encounter. *See United States v. Aguilar*, 301 F. Supp. 2d 1263, 1270 n.3 (D.N.M. 2004) ("The Court finds that the analysis applicable to traffic stops is equally applicable here, where Defendant parked his car before Deputy Furbee was able to stop him."). Other cases involving a parked car with which a traffic violation was committed have not addressed the issue explicitly but have assumed that the initial encounter was a constitutional traffic stop. *See Hackett v. Artesia Police Dep't*, 379 F. App'x 789, 791 (10th Cir. 2010) (unpublished); *Davis v. City of Chicago*, No. 09-CV-778, 2011 WL 1692173, slip op. at 1, 5 (N.D. Ill. May 4, 2011); *Sullivan v. Cnty. of Pender, N.C.*, No. 7:04-CV-26 FL(1), 2006 WL 4664321 (E.D.N.C. June 28, 2006) (unpublished). I similarly conclude that the simple fact that the car was parked immediately before the officers initiated the encounter does not change this encounter from a traffic stop into some other sort of investigatory detention. However, even if it did, essentially the same standard would apply, *see Terry*, 392 U.S. at 20-23, and the police would still have reason to believe that the driver of Sweat's vehicle violated New Mexico's laws.

[3] Because Officer Froats witnessed a violation of state law on a public road, Sweat's repeated assertion that the ultimate encounter occurred on private property is irrelevant.

Mexico requires that all vehicles being operated in the state have a current registration plate, including validating sticker, displayed on the rear of the vehicle. N.M. STAT. ANN. § 66-3-18 (West 2010). Thus, I conclude that, based on the undisputed facts, the initial stop was constitutional.

The detention resulting from the traffic stop must be "reasonably related in scope to the circumstances that justified the stop in the first place." *United States v. Valenzuela*, 494 F.3d 886, 888 (10th Cir. 2007) (citation omitted). It is permissible for the scope of a traffic stop to include collecting a driver's license and vehicle registration, running a computer check, and issuing a citation. *United States v. Aguilar*, 301 F. Supp. 2d 1263, 1270 (D.N.M. 2004) (citing *United States v. Arango*, 912 F.2d 441, 446 (10th Cir. 1990)). There are no bright-line rules defining a reasonable length and appropriate scope for an investigatory stop, though; the Supreme Court has held that "common sense and ordinary human experience" must guide the inquiry.[4] *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002) (quoting *United States v. Sharpe*, 470 U.S. 675, 685 (1985)). According to all accounts and the tape recording, Sweat and Garner both initially denied driving the vehicle. Sweat admitted that the vehicle was registered to him but indicated that he did not have his registration or insurance with him. Furthermore, neither Sweat nor Garner could provide a driver's license. The continued detention of Sweat until Officer Froats could complete a computer check, determine the driver, and issue a citation was clearly appropriate. I conclude that the continued detention was reasonably related to the purpose of the stop and so Sweat's brief detention was constitutional.

Where the officer has initiated a legitimate traffic stop, she may "conduct a protective frisk

---

[4] Though this case specifically addresses investigatory stops, a routine traffic stop "is governed by the 'principles developed for investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 . . . (1968).'" *United States v. Guerrero-Espinoza*, 462 F.3d 1302, 1307 (10th Cir. 2006) (quoting *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005)).

of the suspect's outer clothing if she reasonably believes that the suspect might be armed and presently dangerous." *United States v. Harris*, 313 F.3d 1228, 1234 (10th Cir. 2002) (citing *Terry*, 392 U.S. at 27, 30). However, the search is only justified by the need to protect the police officer and others nearby, so it must be confined to feeling for instruments that could be used as weapons. *Id.* (quotation omitted). The validity of a *Terry* frisk is determined by the totality of the circumstances. *Id.* (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)). Here, the undisputed circumstances include that Sweat and Garner evaded Officer Froats' questions, they were somewhat uncooperative as Officer Froats attempted to investigate the traffic offense, they continued to move around despite Officer Froats twice instructing them to sit against the car, and Officer Froats requested that they remove their hands from their pockets at least once.[5] Officer Froats provided an affidavit stating that he told Garner and Sweat to remove their hands from their pockets three or four times, that he believed that they might have a weapon in their pockets, and that he was concerned that they might be reaching for a weapon. (Doc. 15 Ex. A at 3.) Based on the totality of the circumstances, I conclude that the protective frisk of Sweat was reasonably justified. *See Harris*, 313 F.3d at 1236 (upholding a protective frisk where the individual appeared nervous and refused to take his hands out of his pockets after the officer requested that he do so). Again, then, the officers' conduct was constitutional.

When a police officer in the City of Las Cruces arrests the operator of a vehicle for driving while his license is suspended as a result of driving while intoxicated, he has the authority to

---

[5] While a suspect detained for an investigatory stop "is not obliged to respond" to questions, *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984), the police certainly consider a suspect's attitude in evaluating whether a frisk is necessary. *See, e.g.*, *Harris*, 313 F.3d at 1236 (considering the suspect's nervousness as a factor). One aspect of the totality of the circumstances in this case was that Sweat was evasive and refused to admit who had been driving the vehicle. That alone would not justify a pat-down search, but that was not the sole factor in this case.

temporarily seize the vehicle. LAS CRUCES, N.M., MUNICIPAL CODE §§ 27-6(2)(d) & (3) (2004). The municipal code also provides that a vehicle subject to forfeiture or temporary impoundment will not be seized if a co-owner of the vehicle did not have knowledge of or consent to the use of the vehicle by the driver. *Id.* at § 27-6(6)(a). Here, Officer Froats impounded Sweat's vehicle after Garner admitted to being the driver, the dispatcher informed him that Garner's driver's license was revoked for driving while intoxicated, and Garner was placed under arrest. (*See* Doc. 15 Ex. A at 4.) Sweat disputes none of these facts, but rather asserts that he was really the driver and that Garner was lying when he claimed to be the driver. (*See* Doc. 24 at 4.) Sweat further maintains that the car was not being driven, presumably claiming that the municipal code provision should not apply for that reason.[6]

I find that the officers had probable cause to arrest Garner for driving with a license revoked for driving while intoxicated, and the fact that Sweat and Garner were together indicates that Sweat consented to Garner operating the vehicle. In addition, the officers at the scene had no reason to suspect that Garner was not the actual driver. Thus, the officers had legal authority under the municipal code to impound Sweat's vehicle at the time of Garner's arrest. Because the inquiry at this point is qualified immunity, it is irrelevant whether the provision of the municipal code is constitutional; because Officer Froats acted in objectively reasonable reliance upon a statute authorizing impoundment, his conduct did not violate clearly established law. *See Illinois v. Krull*, 480 U.S. 340, 349-50, 356-57 (1987) (holding that an officer's reliance on a statute later found unconstitutional did not require the suppression of evidence because the officer's reliance was objectively reasonable); *see also Groh v. Ramirez*, 540 U.S. 551, 565 n.8 (2004) (citation omitted)

---

[6] As discussed above, the fact that the vehicle was parked at the time of the stop is irrelevant. It is undisputed that Officer Froats witnessed the vehicle being operated on a public road.

(noting that the same good-faith standard that applies to suppression hearings defines qualified immunity of an officer).

Finally, Sweat has asserted that the officers detained him because he is African American. It is clearly established law that the individual officer's subjective motivation in conducting an otherwise legitimate traffic stop is irrelevant unless a plaintiff can point to specific evidence of improper motive. *Whren v. United States*, 517 U.S. 806, 813 (1996); *Swanson*, 577 F.3d at 1201 (citation omitted); *Lewis v. City of Fort Collins*, 903 F.2d 752, 755 (10th Cir. 1990) (citations omitted). I have found that the officers had an objectively justified basis for stopping, investigating, and frisking Sweat based on the expired license plates on the vehicle and his subsequent conduct. Unless a plaintiff can present specific evidence that the officers' actions were improperly motivated, the objective justification of reasonable suspicion and probable cause is all that is required for police officers to take the actions that Officers Froats and Hartranft took against Sweat. Sweat has presented no specific evidence that the officers acted with improper intent. Thus, their conduct was not unconstitutional under the Fourteenth Amendment.

B.  *Liability of the City*

Sweat has named the City of Las Cruces as a defendant in this action based primarily on the conduct of its employees, Officers Froats and Hartranft. To proceed in an action under 42 U.S.C. § 1983 against a municipality based on the conduct of its employees, a plaintiff must allege two elements. The plaintiff must allege first that the employees violated his constitutional rights and second that some policy or custom of the entity was the direct cause or moving force behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 694 (1978); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 820 (1985) (citation omitted); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citations omitted). This is because, under

well-settled law, government officials or entities cannot be held liable for the unconstitutional actions of subordinates under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1948 (2009) (citations omitted).

As discussed above, I have found that Sweat has failed to put forth facts demonstrating a constitutional violation as to his initial detention, his continued detention, the frisk, and the alleged racial discrimination. Because there was no constitutional violation by the City of Las Cruces police officers, there can be no liability against the City. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Trigalet v. City of Tulsa, Okla.*, 239 F.3d 1150, 1154-56 (10th Cir. 2001).

As to the impoundment of his vehicle, Sweat's allegation is somewhat unclear. He is either contending that (1) the officers did not follow the municipal code because they impounded a car that was not being operated when the officers initiated the stop or (2) the provision of the municipal code is unconstitutional because it does not contain an exception for vehicles operated only on private property. (*See* Doc. 1 at 7.) Either claim, however, can be dispensed with easily. If he is claiming the former, then he has not alleged that a policy or custom was the motivating force behind the officers' action. Rather, the officers' alleged action would be in contravention of the municipal code. Thus, this claim against the City of Las Cruces fails. *See, e.g.*, *Monell*, 436 U.S. at 690-91, 694. If he is claiming the latter, he has alleged that a policy or custom was the motivating force behind the officers' action.[7] However, as I have stated, it is undisputed that the police did see the vehicle in operation on a public road. It is a well-settled principle of constitutional law that "the court will not anticipate the decision of a constitutional question upon a record which does not appropriately

---

[7] I found above that the individual officers are entitled to qualified immunity on this claim. However, I did not dispose of potential liability for the City of Las Cruces because I merely found that the officers acted reasonably in light of the existing law. *See Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998).

present it." *Tenn. Pub. Co. v. Am. Nat. Bank*, 299 U.S. 18, 22 (1936); *see also Three Affiliated Tribes v. Wold Eng'g*, 467 U.S. 138, 157 (1983); *United States v. Pearson*, 203 F.3d 1243, 1259 (10th Cir. 2000). Thus, because the facts of this case do not present Sweat's challenge regarding the constitutionality of the municipal code, I decline to reach that issue. I conclude that the City of Las Cruces cannot be held liable as to this claim.

RECOMMENDATION

For the foregoing reasons, I recommend that the Defendants' Motion for Summary Judgment (Doc. 14) be granted in its entirety, that the Plaintiff's cross-Motion for Summary Judgment (Doc. 24) be denied, and that the Plaintiff's Complaint (Doc. 1) be dismissed with prejudice.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
William P. Lynch
United States Magistrate Judge